Trial Court Summary Judgment. In short, the trial court concluded that by a preponderance of the evidence, PHN established each of the plaintiffs qualifies as exempt based on the FLSA's administrative exemption. To reach this conclusion, the trial court erred in several ways, which can be broken down into two main categories. First, that the trial court made legal errors in broadening the application of the administrative exemption, and two, that it made incorrect factual conclusions. Specifically, it incorrectly concluded that the plaintiffs were paid a salary when questions of fact exist as to any such conclusion, and that the plaintiffs exercised discretion and independent judgment in their job duties. The court reached these conclusions by applying an incorrect standard in determining summary judgment based on a preponderance of the evidence standard rather than a question of material fact. The court also relied on evidence not presented in this summary judgment or in the record. Although we believe we should win on each and every one of those points, we requested oral arguments specifically to discuss the court's extensive broadening of the administrative exemption. This is important because the trial court's judgment substantially broadens the administrative exemption, almost to the point that any employee not specifically turning a screw on an assembly line or selling a product as a cashier at a retail facility would qualify as administratively exempt. If this court affirms the trial court's decision, it will set a precedent that significantly broadens the scope of the FLSA's administrative exemption, that transforms the exception to the rule. It virtually would allow any employee that could be classified as exempt unless they're specifically excluded from the exemption. And I'm sure that each of you has heard enough FLSA cases to know that we already talk in double negatives about being exempt from the overtime provision and whether or not you are exempt. This would, in fact, make it a triple negative because the rule would apply, then the administrative exemption would apply to everybody who's not in production, and then you would have to try and exclude yourself from that exemption, which doesn't make any sense. It undermines the entire point of the original FLSA. The FLSA's administrative exemption requires three things. The person be paid by a salary, that their primary job duties be work directly related to management and general business operations of the employer or its customers, and the work includes the exercise of discretion and independent judgment with respect to matters of significance, not just discretion and independent judgment, but it has to be about something important. In regards to the being paid by salary, if time permits, I will get to that, but I'd like to address that later as an error of fact, rather than the big issues, which I believe are of law, which are before the court. In regards to the management and general business operations expansion by the trial court, the regulations say that an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment. These regulations then give an illustrative list. We don't dispute that the list is illustrative and it is not necessarily complete, but the list includes a commonality. It includes things like tax, finance, accounting, budgeting, auditing, insurance. That commonality is that it all happens in what is traditionally considered the back end of the house, the back side of the house. Those common business aspects that are common to all businesses throughout America, regardless of whether you sell legal services or widgets, or you sell insurance products, all businesses have to deal with accounting and legal and advertising and marketing. And that is the issue that is before the court. The regulations, the distinction is between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities that the enterprise exists to produce and market. The trial court, through its reasoning, substantially broadened the traditional applications of this exemption. Remember, there's three main jobs at issue in this particular case, the contracting specialist, the operations specialist, and the PHN's own words on page seven of the appellee's brief and supported by the record at pages 1672 and 3376, even PHN recognizes that contracting specialists have nothing to do with business operations. The big theme is that Judge Zaney far expanded the exemption from what is traditional and how it is applied. It would have helped me in your brief if you had cited our authority as to what is traditional, but I didn't see any Fifth Circuit sites and then People's Health files a 58-page brief and they quote Fifth Circuit authority, especially the Cheatham case, but for some reason you decided not to file a reply brief. So, if you're going to credibly say a district court far expanded the law, it's probably important either to tell us what the narrow law is in court opinions or at least to respond to what looks like highly applicable Fifth Circuit law. So, if you could give me the best Fifth Circuit case that creates the baseline as being so narrow, that would help, and second, if you could respond to their citation to Cheatham, that would help. Well, if I could start by replying to their citation to Cheatham, Your Honor. In Cheatham, the plaintiffs had different job titles, but they were all considered to be claims adjusters for the insurance product. So, there's distinguishing factors here that are critical. See, PHN is in the business of selling medical insurance, not property insurance, not life insurance, but medical insurance, and in the Cheatham case, the plaintiffs were claims adjusters. They were essentially taking in claims and determining whether or not those claims needed to be paid. None of that is applicable to the case here. Here, PHN sells a product that has two parts. First, like property insurance and life insurance, it promises to pay if there is a reason to pay. In this particular case, if there's a medical reason to pay, PHN promises to pay, but unlike life insurance and property insurance or in the Cheatham case, they also have to promise to pay, to allow the insured to get treated by a doctor that they trust or like, and that is why in this particular case, specifically in the contracting specialist arena, that these individuals are more akin to manufacturing than they are to processing claims, which is what the Cheatham case is. I don't understand that, Mr. Danout. I mean, they may be salespeople. They go out and contact other groups in order to try to get them into the network, right? Yes, Your Honor, but calling them sales... They were well paid, too. Well, we don't dispute that they were well paid, but I don't think that has anything to do with the analysis of whether or not they were administratively exempt. To Your Honor's point, that they were sales. They weren't actually sales. They were recruiters, and they were recruiting what PHN ultimately sells as a product, because what PHN ultimately sells as a product is, we will pay for your insurance, and we will do so with this list of doctors. So, what is your best circuit authority, even if you now are trying to or the limitation of the administrative exemption, Your Honor? I'm not trying to say that it is narrowly construed. What I'm trying to say, in this particular case, these individuals don't... I know, but you did say you'd get to the facts, but you made your compelling oral argument point to us that Judge Zaney far extended it. We had to hear oral argument because this is a big extension from what is normal, and I'm just asking you for any circuit case that you think is analogous, where the exemption was not applied. If you don't have one, that's okay. There may be just... I think this is a unique enough case that I don't have one that is directly on point, Your Honor. So, then go to your facts. You're right. Go to the issue. So, what we have is, in this particular case, that the... specifically, the contracting specialists are selling or recruiting doctors and physicians to be part of this network. It has nothing to do with the business operations that are required to be part of the exemption under the regulations. They're actually developing the product. Similarly, the court made an error with the operations specialist position. The operations specialist position is simply a person who goes from department to department, identifies what the individuals in that department do, writes down their processes, and reports it. That's it. Isn't that like research, which is one of the listed functions? And isn't the recruiting sort of like marketing? I mean, these are listed 201B tasks back in the office as opposed to on production line or outselling it, right? That's the sort of simplistic binary way I look at it, but maybe it's wrong. Well, I don't believe they're analogous to... certainly not to marketing, because marketing is dealt with in developing your customer base, not developing your product. You don't do marketing so that you can buy... But the doctors aren't a product. In one sense, they are, Your Honor, because that's what PHN is selling. PHN is saying, use our insurance over ABC insurance, because this is our network of doctors. These are the ones that we will pay for. So in some ways, and that's why I'm distinguishing it from property insurance, Your Honor, is they are kind of part of the product. At least they're part of the commodity. So second to that is the operations specialist. And finally, we have the pharmacy part D specialist, whose her job is quite simply paperwork. When claims are rejected for pharmacy-related reasons, she receives a list, she identifies any that might be a paperwork issue, corrects what she can, and then reports the rest to management. In no way can that be considered an important business decision for the company. Second to that, as I'm running a little low on time, is the ultimate issue of discretion and independent judgment. In each of these cases, the court not only has to find that all of these fall into the administrative role, that is the back house of the company, but each one of these job duties exercises discretion and independent judgment to matters of significance. In regards to the contracting specialist position, the trial court ruled that because the individual contracting specialist could tailor their sales pitch to recruit doctors, that was an independent decision that had a matter of significance. I don't think anybody can reach the conclusion that bringing a doctor donuts versus croissants, because that will make him like you better. You're not saying these people operated in a rote way according to grids and matrices. Your point is they sort of doing relatively insignificant work? That's your argument? It's not that they lacked independent judgment. It's that they weren't very essential to the business services. Not necessarily, Your Honor. I think the decision-making was inconsequential to the business. I'm not minimizing what they did. I'm minimizing their decision-making authority that they had. They didn't have the authority to change the parameters of how a doctor engaged with PHN. The doctors are interested in how do I get paid, what paperwork's involved, how quickly can I get paid, that sort of thing. The contracting specialists have nothing to do with that. What they could decide was, if this doctor's more interested in paperwork than he is on timeliness of returns, I'm going focus on that. That cannot be considered a matter of significance as contemplated by the exception in the FLSA. If that is, and it's so insignificant in real life, it basically renders that requirement inconsequential and renders it moot, because everything then would be a matter of significance if it ultimately had an impact on the bottom-line business for the business. Similarly, the operations specialist had the same thing. She had no authority at all. She couldn't change policy. She couldn't adopt new policy. She couldn't create new policy. She simply reported what was going on and advised if there were similar things going on in other departments so that those managers could increase efficiency. Not that she could do it. As far as the pharmacy Part D specialist, she had no authority at all either. She essentially brought in information, tried to make some clerical corrections if possible, and then move on. The trial court essentially erred by equating autonomy to independent judgment and discretion. The trial court concluded that because she worked independently, she had to have decisions independently. But that's an illogical conclusion. There are tons of people in the workforce who work independently that aren't necessarily making important decisions regarding matters of significance. I believe my time's up. All right. Yes, and you have time for rebuttal. Thank you for keeping to the timetable. Ms. Roussel? Thank you, Your Honor. May it please the Court, I'd like to do just as the appellants did and focus on the general business operations component and the independence and discretion component and leave the issue of the salary basis to the briefs unless the Court has any questions. Beginning with whether the appellant's jobs required them or related rather to People's Health's general business operations, in order to understand the nature of People's Health's business, People's Health is an insurance company. It provides a Medicare Advantage plan to people who are eligible for that plan. Its day-to-day business operations involve offering the insurance policy to the market and servicing the needs of its members. In this case, the appellants don't really contend there's any question of fact concerning what their primary job duties were, nor could they really do that because People's Health relied on their own description of their work to support its summary judgment motion and the District Court also relied on their own description of their job duties to support its ruling. Under the FLSA's interpreting and implementing regulations, if an employee performs work that quote, assists with the running or servicing of the business, then that work is deemed to relate directly to the employer's general business operations. Whereas, on the other hand, if the work relates to carrying out the day-to-day business of the company in People's Health's context, that would mean either selling its insurance product or servicing the needs of its members, then it does not. And in this case, none of the appellant's primary job duties involved either selling People's Health's or servicing the needs of the members pursuant to the policy. All of them really did work in the proverbial back office, ensuring that People's Health had the operational infrastructure that it needed to do business. And so, if you start by looking at the contracting specialists, there's no dispute about what their job was. They were recruiters who were responsible for building the network of providers without which People's Health cannot do markets and specialties where People's Health needs providers and they go out and try to build a network. If People's Health wants to expand into a new geographic area, it's the responsibility of the contracting specialist to locate providers in those markets and then to recruit them to join the network and eventually to put in place a contract with them. The district court correctly concluded that those activities relate to People's Health's general business operations. The argument that the appellants are really making is not based on the FLSA's regulations. It's based on language from the Department of Labor's field operations handbook and an administrative versus production dichotomy that some courts have applied in some cases. But it's not a dichotomy that should apply in this case. As an initial matter, the courts that have addressed that dichotomy have recognized that it's not dispositive. And furthermore, this court in Dewin v. MILLC 858F3-331 in 2017 recognized that that dichotomy may have limited relevance in certain contexts. It found in that case that it's more in keeping with the industrial age and it is not so much in keeping with the modern service industry context. I would submit to the court that People's Health's business is more service-oriented than production-oriented. But even if you apply that standard here, which we don't believe is the right standard to apply, it doesn't warrant reversal of the district court's ruling. To the extent that People's Health is deemed to produce a product, it's an insurance policy, and the contracting specialist had no role in creating that product or underwriting it or offering it and selling it to the market. In that regard, this case is like the Cheatham case, where Judge Ash, I believe it was, correctly recognized that the product of an insurance company is the policy. But to the extent that People's Health is deemed to deliver a service, that would be helping its members to take advantage of their benefits under the policy. The contracting specialist had no role in that either. Ensuring that People's Health has an adequate network of providers and that it isn't deficient in any specialty in any market is really about compliance. It's about making sure that People's Health is in compliance with its contract with CMS. And compliance is specifically listed as one of the functional areas that the regulations identify as relating to a company's general business operations. If you look at the operations specialist, her work was to work with various departments at People's Health to find ways to improve operational efficiencies. As her title suggests, her job was operational in nature. And it's difficult to identify many jobs that are more operational than the one that she performed. And so perhaps for that reason, the appellants in their argument, essentially make the argument that not that her job didn't relate to business operations, but that the tasks she performed were too mundane to count. And the record doesn't actually support that. But regardless, that's not the standard for this prong of the test. The standard is whether her job duties related to assisting People's Health to run or service its business. And they undisputedly did. With respect to the pharmacy Part D specialist, People's Health undisputedly only had one person in that position. She was the subject matter expert at the company responsible for resolving prescription drug events. And so the court understands, generally speaking, when a People's Health member goes to a pharmacy to get a drug product, then a pharmacy benefit manager will submit this PBE, this prescription drug event, to the government on People's Health's behalf. It's essentially like a claim for payment. And then CMS will review it, and it'll determine whether or not to approve or to reject it. If CMS approves it, that is a recognition that that is a benefit that is covered under the plan terms, and the government has an obligation to reimburse People's Health for it. If it rejects it, it doesn't immediately reimburse People's Health. What it does instead is give any number of different reasons for the rejection. And then it is the responsibility of the pharmacy benefit manager to make a determination about the propriety of that rejection. As she described it, she enjoyed doing the dig. She would analyze and research and evaluate the reason. Most importantly, she would determine whether the approval was an appropriate one or not, which goes to a very significant compliance question in the healthcare industry. And that is making sure that People's Health is getting paid for the claims that the government should be paying it for, but is not getting paid for claims that it is not entitled to money for. And that unquestionably relates to assisting People's Health to run or service its business, as opposed to servicing the members. I will point out that in the briefs, the appellants described the pharmacy Part D specialist job as helping consumers to work through insurance red tape and made it sound as though this person was helping the members with their pharmacy plan benefits. But that is absolutely not supported by the record. The job of this person, this one person within the company, was exclusively devoted to making sure that People's Health was getting paid for what it should be getting paid for and not getting paid for what it shouldn't be. And the district court correctly concluded that that job is functionally similar to many of the categories that are listed in the regulations like auditing, insurance, and legal and regulatory compliance. My opposing counsel mentioned that the appellants are not arguing here for a narrow construction of the Fair Labor Standards Act, but I believe that is precisely what they are doing. Their argument at the trial court level and on appeal essentially is that if something does not fit squarely into one of these categories that the regulations recognize as relating to general business operations, then it doesn't count. But as this court probably knows, in 2018, the United States Supreme Court in the Encino Motorcars versus Navarro case explicitly rejected the idea that exceptions under the Fair Labor Standards Act should be given a narrow interpretation. In that case, the Supreme Court said that the exemptions are as much a part of the Act as the overtime requirement itself and instructed that they should be given a fair reading. They shouldn't be construed narrowly or strictly. Ms. Roussell? Yes. I mean, again, you clearly, both of you, practice in this area a lot. Just looking at and yet when I look at the two elements, does it relate to general business operations and does it involve discretion? I don't see a good limiting principle and you may work in this area. Would you say there is one best authority that tells us when someone isn't working in business operations and when a person isn't imbued with independent judgment? Yeah, that's a very good question. I think the best authority is the implementing regulations for the Fair Labor Standards Act and the language in them that says if something relates to assisting with the running or the servicing of the business and when you take that standard and you put it into a service industry job, which really people's health is, I think what you should look at or what the guidance is from that regulation is, if somebody is helping to service the business, then you have met that criteria. If someone is helping to service the customer, the member, then they aren't. So, for instance, in the retail establishment, if somebody is in the retail store selling a t-shirt, then they are not helping to service the business. But somebody who's finding new locations where you might want to... So, it's not office versus production line, it's business versus member, direct contact. Okay, that's helpful for me conceptually. What about the third element? Do they have expertise versus do they do things rote? Or how do you know when someone has independent judgment versus doesn't? Yeah. So, again, Your Honor, I actually think the language and the regulations here is helpful. The basic language as opposed to the enumerated various examples. If you go back to the basics, what it says is if a person is required to consider two different courses of conduct and use their own to determine which one to follow, that is exercising independent judgment and discretion. And then you, of course, also have to have the fact that that relates to something that is a matter of significance to the company. So, I actually think the regulations are helpful if you go straight from them. Just do that for me, my last question for the pharmacy specialist. Do both those little points with the record evidence. Perfect. So, Your Honor, the pharmacy part D specialist, with respect to the first element, exercising the independence and discretion, she was required to take data that was provided by CMS and to analyze that data. As I said, Your Honor, I don't have the record site for this. It's in her deposition testimony. She said, I like the dig. That's how she described it. You know, whether or not this was a proper rejection and making her own judgment based on her knowledge about whether, in fact, this was something that was a covered plan payment or wasn't a covered plan payment. And the reason it's really significant is twofold. First of all, as I mentioned before, it is imperative that people's health make sure that it is only getting paid for things that it is entitled to be paid for. That's an important health care industry compliance standard. It's also important because people's health relies on that data when it goes on an annual basis to submit its bid. So, it gives that data and needs to be as accurate as possible. They give it to its actuaries and the actuaries use it to prepare the bid to the government so that it can make sure that it is pricing its contract with the government in a way that it can make money. So, it's significant in that regard. It's also significant because people's health pays millions and millions of dollars of pharmacy claims. And the only person in the company who is responsible for making the judgment as to whether or not a particular claim should or shouldn't be paid or specifically whether a rejection is or isn't proper was this pharmacy Part D specialist. And so, in this case, she did have to use her judgment to decide, is this a proper rejection or not? If it's not, why not? And what can we do to make sure that we get an accurate outcome here? And if she exercised her judgment to say, in my own the right decision here in not reimbursing people's health, that has significant financial consequences. Okay, thank you. Into the millions. I guess, your honor, with respect to just jumping ahead, because I was about to get to the independence and judgment required of the other positions, the same standard applies, right? Where people using different sort of courses of conduct and with regard to significant matters. You know, here again, everybody understands what the role of the contracting specialist was. We cited a number of cases at the district court level that are that are pretty factually analogous, that involved people who were recruiters who would go out who would identify people, they would then put together materials summarizing what those people did, and they would make recommendations to others about whether to hire those people and so forth. Those cases aren't exactly the same because these jobs are pretty unique, but they're very analogous to what these folks did. They would go out, identify a need, locate providers, do independent research, contact them, meet with them, usually alone, and encourage them to see the benefit of doing business with people's health. And they would then go ahead and put in place a contract with them. At the district court level, the appellants didn't distinguish any of those cases and on appeal, they ignored them. But really, they are quite analogous. Instead, the appellant cited a couple of cases that really have no factual similarity to this case at all. So not only were these folks doing things that required them to exercise their discretion and judgment about how to target, but it unquestionably was something important because no one disputes that people's health could not do business without a network of providers. Finally, concerning the operations specialist, really here, I think the admissions of the operations specialist herself are dispositive of the question of whether she had independent judgment or discretion to do her job. With her, she admitted in her own discovery responses and in her deposition testimony that she was responsible for problem solving for the company. She said she would assess need, make recommendations about what changes were made, what processes should be created. She would develop strategies to remediate those needs. Ms. Roussel, at some point, would you please talk about the standard of review? Did the judge conduct a bench trial? What did he do here? Yes, Your Honor, certainly. The judge did not conduct a bench trial. This was decided on a motion for summary judgment. The judge did not err in using the wrong standard. There was one standard for the motion for summary judgment, which is, is there any question of fact? The judge correctly found that there was no question of fact with respect to what these people's job were. However, he did know that because an exemption is an affirmative defense, that people's health is responsible for proving on summary judgment, that people's health did bear a burden of proof in connection with the summary judgment. And it was our burden to prove by a preponderance of the evidence that each of the elements of these exemptions was satisfied. And so I think it was appropriate for Judge Zaney to recognize what people's health burden was, and to conclude that we met it. And I don't think that he conflated improperly the standard of proof on a summary judgment with the burden of proof that people's health had to meet to prevail. Okay. Unless the court has any questions concerning the salary basis, which, which we have not addressed yet, I will go ahead and, and yield the rest of my time. Okay. Thank you. Um, Mr. Dannenhauer. Yes. Your, your honor, I had previously said, I don't believe there's any case specifically on point regarding the job duties that each of these plaintiffs performed. And I think that's true regarding the authority that I have cited and is true regarding the authority that the defendant has cited. When your honor asked what, where are the limitations to this application in that I have cited Clark v. Centene. Now I will admit that that is not directly on point because it does not directly address the, the job duties before the court. However, it does address the logic used to apply this exemption of the FLSA. Now, remember the FLSA has a default rule. You're entitled to overtime unless you fall into one of these exceptions. Now, the defendant has just articulated that the Supreme Court has, has issued an order saying that those exemptions need a fair reading. That is the term of art. They are a fair reading. We don't dispute that. What we dispute is that a fair reading means that they get more credibility or more attention than the actual underlying rule itself. Because the unless you fall into an exception and the way this exception is being applied, and this is why I say it broadens the actual law. Your honor is that it's being applied that the exception becomes the rule in so much as anybody, any entity can say, this is important to our business operations because ultimately affects our bottom dollar. And unless it is one of the, the way the rules being applied is to say that the rule is, is making the underlying principle of your entitlement to overtime narrowly construed. Because if we apply the administrative rule as broadly as this court did, then it will apply to everybody unless you're specifically listed in the exceptions of this rule that were exemplary and illustrative, not complete of, of being in sales and of being in sales and being in being in sales and management. So in an hour, can I get you up? I realize it's tough to have a home office. This is actually my real office, but I have the entire office locked. So they're trying to get in by pounding through my window. Oh my goodness. Now you've got me distracted. Oh, I do have a question as to how this case rose. Mr. Jones is the lead plaintiff. The district court apparently conditionally certified or whatever the rule is for a mass case. So you were trying to sue on behalf of all of the contract specialists, operations specialists, and maybe, I don't know about pharmacists, but anyway, how many people were notified of this action? I don't have that number off the top of my head, your honor. It was not a substantial amount. It was not in the hundreds. If, if you're asking about that sort of thing, this is a, this is a relatively small unit in each of the cases. Okay. And I suppose this came about in part because some of these people lost their jobs when New Orleans Regional was taken over by PHP. Actually, your honor, most of these, most of these came, most of the plaintiffs came into the parties while they were still employed. Oh, okay. The lead plaintiff was terminated prior to filing the lawsuit, but most of them were still employed. Okay. So in regards to your honor's question about the standard of review, just so I make sure I address it. The concern I have with the standard of review and the phraseology that both the court and defendant used is that when there is a bench trial at summary judgment, the court has additional discretion regarding finding factual disputes. And I don't dispute that that language has been said that has limited discretion to decide that the same evidence be presented to him or her as a trier fact at trial could not possibly lead to a different result. Well, what did you, was there any evidence that you were not allowed to present that you would have presented at a bench trial? Well, there was no evidence that I was made aware of until the judgment was, was rendered your honor. And in that particular case, that's where I say the judge took evidence that he had seen in a different case and let that influence his decision here. But other than that, you're not identifying something about the salaries or about the job duties because all your plaintiffs were deposed. And I suppose you could have asked them, but you might not have asked them additional questions. So you're not saying that this deprived you of opportunity to present evidence? No, your honor. What we're saying is that by applying this standard, he switched the summary judgment standard from, if there's a genuine issue of material fact to I've been convinced by a preponderance of the evidence. And that is evidence through the salary requirement. There is no way to reach a conclusion other than there's a question of material fact about the salary requirement. There's testimony from their we only pay for the hours that you worked. As long as you work 40 hours, you get your salary, as long as you work 40 hours. And if you work less than that, we don't pay you. And then there's record evidence of them being docked when they take time off. How is that not a question of fact that requires a trial? Okay. All right. Your time is up. Thank you both very much. It was Thank you.